481 P.2d 672

**Marjorie Lee BAKER, Plaintiff and Respondent,**

v.

**Alvin D. BAKER, Defendant and Appellant.**

No. 12098.

Supreme Court of Utah.

Feb. 26, 1971.

---

George E. Mangan of Mangan & Verhaaren, Salt Lake City, for defendant and appellant.

Joseph P. McCarthy, Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Defendant, Alvin D. Baker, appeals in a divorce action in which he was granted the divorce on his counterclaim on the grounds of mental cruelty. He attacks only the portions of the decree which award custody of the parties' three minor children to the plaintiff, Marjorie Lee Baker, together with $50 per month support money for each child, and $550 attorney's fees.

The parties were married in June 1956, and reside in Salt Lake City where they are both school teachers. Their children are: boys, ages 13 and 11, and a girl, age 9. Plaintiff has been teaching in high school and junior high school since 1955, the year before her marriage. Defendant continued his schooling after the marriage and graduated from the University of Utah in Education in 1961. He was not able to obtain a position as a teacher at that time. However, he worked at various jobs and at the time of trial was also employed as a teacher.

This marriage had been in such troubled circumstances for considerable time that both parties desired a divorce. Plaintiff filed her complaint in October 1968. Defendant answered and counterclaimed for the same purpose. As a result of the quarreling the defendant had moved in with his parents who lived across the street. It is.

evident that the defendant felt so jealous and suspicious of the plaintiff that his surveillance of her conduct made her life miserable, and that she, at least to some extent, so conducted herself as to justify his suspicions. He complains: of her lack of serious commitment to her wifely responsibilities; that she would hardly ever come straight home from school where she could and mostly did leave by 4:30, but usually would not get home until around 6:00 in the evening; that on Saturdays she would always spend all day and most of the evenings away from home; that as a result he was unduly burdened with the care of the children and household duties; that she often spent her evenings at places different from plans announced to the family; often left school in the company of another man; and that her conduct with other men even in their own home on occasions embarrassed and distressed him.

Plaintiff's grievance was mainly that defendant spent too much of his time checking up on her; that he came to the school where she taught and discussed her conduct with other teachers; that he did the same with their children and enlisted their help in keeping watch on her; and that he made accusatory, abusive and insulting comments about her in the presence of the children and others.

Even from the point of view of the defendant-appellant we can see nothing much to be gained by now conjecturing as to which unseemly conduct provocative of the other came first, nor in weighing niceties as to who should share the greater degree of blame. It is apparent that although there was substantial fault on both sides, the trial court was justifiably convinced that the situation between the parties had become so intolerable and irreversible that there should be a parting of the ways; and that as he appraised the evidence as to the relative faults between them, the divorce should be granted to the defendant on the ground of mental cruelty.

Having so concluded, the trial court very properly proceeded to treat as quite a separate problem the devising of an arrangement of the family and their resources that would best enable them to reconstruct their lives to the highest degree possible on a happy and useful basis, with the paramount consideration being given to the welfare of the children.[1] With this point of view we have no disposition to disagree.

### Custody of Children

Shortly after the initiation of the action in October 1968, the district judge had ordered that the parties attend the Family Counseling Service; and that the staff conduct an investigation. The resulting evaluation was made available to the

1. See Walton v. Coffman, 110 Utah 1, 169 P.2d 97.

court and counsel for both parties in May 1969. The court supplemented this by interviewing the two older children as part of the trial in June 1969, in which they indicated that they would prefer to live with their father. It was in part at least because the parties seemed to be trying to use the children as pawns between them that the court continued the trial until in August of 1969. Then in October 1969 when the court entered the order granting the defendant the divorce, he awarded "probationary" custody of the children to the plaintiff, with the understanding that the question concerning permanent custody would be again considered after January 1, 1970. When this was done the court granted permanent custody of the children to the plaintiff, with the defendant being given appropriate rights of visitation.

It is not to the discredit of these parties that each so earnestly seeks the custody of their children. Defendant argues that the fact that the court granted him the divorce indicates that he was least at fault in causing the breakup of the marriage; and that this, together with the fact that the older children expressed a preference to live with him, shows that the trial court abused its discretion in not awarding him their custody.

Dealing with disputes over the custody of children can be a very complex situation in which there are many factors to be considered. In regard to that problem as here presented, in order for the court to best assist in alleviating the existing troubles, it is necessary that the law impose upon the parties the duty of realizing and acting in an awareness of certain basic propositions: that making the choice as to custody of children in close cases is among the most perplexing decisions that judges have to make; that it is hardly to be expected that a judge can take a bad situation and fashion from it any perfect solution, or even one which will completely satisfy all parties concerned; that even though their marriage has terminated, they continue to have some responsibilities to each other, and more importantly, to their children; and that in order to minimize rather than to continue the aggravation of their difficulties they should give expression to their concern for the welfare of their children by exercising the highest degree of tolerance and cooperation of which they are capable.

■ Reverting to defendant's specific contentions: it should be noted that the preference expressed by the children is only advisory upon the court.[2] The faults of

---

2. Chap. 72, S.L.U.1969, amended our statutes by removing from Sec. 30-3-5, U.C.A.1953, that children ten years of age " * * * shall have the privilege of selecting the parent to which they will

attach themselves," and by adding to Sec. 30-3-10 so that it now reads in pertinent part: "In any case of separation of a husband and wife having minor children * * * the court may in-

which the defendant accuses the plaintiff undoubtedly seem less serious in other eyes. This appears to have been so of the trial judge, particularly as they may relate to her qualifications as a mother and custodian of the children and manager of their affairs. With respect to this there is much to be said in her favor, including the capability, industry, and continuity in her work.

### The Economic Settlement

■ At the time of the divorce plaintiff's take home pay was $532 per month; defendant's was $403 plus a net of $220 per month from other work. The parties' principal asset was their home on Bryan Avenue in Salt Lake City. They indicate that in its purchase, remodeling and furnishing they have invested something in excess of $20,000. They have substantial current debts. The major ones in round numbers are Salt Lake Teachers Credit Union $9200, Granite Teachers Credit Union $1400, loan from defendant's father $5300. These debts were being paid off by each party thus: $253 per month by defendant and $133 per month by plaintiff.

The decree ordered them to continue these payments; and awarded each an undivided one half interest in the house and furniture, with possession remaining with "the person having custody of the children." They each have and retain their own automobile.

We acknowledge the correctness of defendant's contention that, this proceeding being in equity, it is the prerogative of this court to review the evidence and to make findings and substitute its judgment for that of the trial court when the ends of justice so require.[3] Nevertheless, as we have often declared, due to the advantaged position of the trial court he should be allowed considerable latitude of discretion in such matters and we will not change his judgment merely because reasonable minds might have arrived at a different conclusion, nor unless the evidence clearly preponderates against the findings, or it appears that there is such an injustice or inequity that there has been plain abuse of his discretion.[4] Considered in that light we are not persuaded that there is any such unfairness or inequity either as to custody of the children or the arrangement

quire of the children and take into consideration the children's desires regarding the future custody; however, such expressed desires shall not be controlling and the court may, nevertheless, determine the children's custody otherwise." Cf. Smith v. Smith, 15 Utah 2d 36, 386 P.2d 900.

3. Wiese v. Wiese, 24 Utah 2d 236, 469 P.2d 504.

4. Lawlor v. Lawlor, 121 Utah 201, 240 P. 2d 271.

as to their economic affairs as to justify our intervention to change the decree.

Affirmed. The parties to bear their own costs on this appeal.

CALLISTER, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.